UNITED STATES of America,
Plaintiff-Appellee,

v.

Vicente MENESES–DAVILA,
Defendant-Appellant.

No. 77–5677.

United States Court of Appeals,
Fifth Circuit.

Sept. 25, 1978.

Gerald R. Severson (Court-Appointed), El Paso, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., Rebecca Westfall, Asst. U. S. Atty., El Paso, Tex., W. Ray Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before RONEY, TJOFLAT and HILL, Circuit Judges.

RONEY, Circuit Judge:

Caught driving a car with 250 pounds of marijuana in the trunk, Vicente Meneses-Davila was convicted of possession of marijuana with intent to distribute. 21 U.S.C.A. § 841(a)(1). We reverse his conviction because the prosecutor impermissibly commented on defendant's post-arrest silence. Since this ground of reversal permits a retrial, we have reviewed defendant's insufficiency of the evidence contention and find that the jury could conclude on the evidence before it that defendant knew that his automobile contained marijuana.

There is no doubt that the prosecutor on several occasions brought out and commented on the fact that defendant remained silent at the time of arrest but then testified at trial to a story the prosecutor thought he should have told to the arresting officer. The Government concedes such prosecutorial conduct is constitutionally condemned by *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), but contends that the error was harmless. A review of the record and the applicable law leads us to conclude that the error was not harmless.

### The Legal Principle

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court raised to a constitutional level the prohibition of prosecutorial "comment on silence for impeachment," prosecutorial conduct which, a year earlier in *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the Court had condemned in federal court under its supervisory power.

The defendant in *Hale*, arrested for robbery, made no response to an officer's inquiry as to the source of money found on his person. In connection with his alibi testimony at trial, he testified his wife had given him the money to purchase some money orders. To impeach him, the prosecutor asked why he had not told that story to the police at the time of his arrest. Reserving decision on the alternative constitutional ground of attack, the Supreme Court held that the evidence lacked significant probative value because, *having been given his Miranda warnings, defendant's failure to explain about the money could as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory trial testimony was a later fabrication.* Relying on its supervisory authority over federal

courts, the court held that it was prejudicial error for the trial court to permit the cross-examination of defendant concerning his silence during police interrogation.

The following term the Supreme Court in *Doyle* elevated the principle to a constitutional level by holding, in an appeal from a state court conviction, that the use for impeachment purposes of a defendant's silence, after receipt of *Miranda* warnings, is a violation of the due process clause of the Fourteenth Amendment.[1]

■ While *Doyle* involved a state trial and the due process clause of the Fourteenth Amendment, it is at once obvious that the Court's decision reaches into federal courts with constitutional authority through the Fifth Amendment.

The next question is whether such a constitutional error as this can be sheltered by the harmless error rule announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Although the Supreme Court has not ruled on this point, the Fifth Circuit directly decided in *Chapman v. United States*, 547 F.2d 1240, 1248 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977), that "the harmless error doctrine is applicable to the kind of constitutional violation at issue in *Doyle*."

Thus, the main issue we address on this appeal is whether the Government's admitted *Doyle* violation is harmless under the circumstances of this case, a determination that must be made "on a case-by-case basis" that depends "upon the circumstances of each case." *United States v. Davis*, 546 F.2d 583, 594–595 & n. 31 (5th Cir.), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977).

The decision requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt. It must be noted that the critical issue at trial was defendant's knowledge that he possessed the prohibited marijuana, a fact proved only by circumstantial evidence.

### Down by the Riverside

The action took place along the Rio Grande River, which separates the United States from Mexico. In response to an informant's tip that marijuana was going to be smuggled into an area of the border near El Paso, Texas, called Prado Street, customs agents set up surveillance. An agent saw three cars park on the Mexican side of the border. Several Mexicans got out of the cars, walked to the river, and later appeared on the American side of the border. A white four-door sedan then drove to the river on the American side. The car's only occupant was the driver, who got out of the car and opened the trunk. The Mexicans milled around the rear of the car, although the surveillant could not see if anything was placed in the trunk. The driver then got back into the car and drove back to the road.

The agent who saw all this alerted another agent who was waiting on the road in an unmarked customs vehicle. Spotting the

---

1. The Court said:

> Despite the importance of cross-examination, we have concluded that the *Miranda* decision compels rejection of the State's position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights, see *Michigan v. Tucker*, 417 U.S. 433, 443–444, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See *United States v. Hale, supra,* 422 U.S. at 177, 95 S.Ct. 2133. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.
> 426 U.S. at 617–618, 96 S.Ct. at 2244 (footnotes omitted).

white sedan described to him, this agent turned on his flashing red light and siren, attempting to stop the suspect vehicle. The car went about a quarter of a mile before stopping for a moment, then continued along the side of the road for another quarter of a mile before finally stopping. When the car was stopped, the driver and sole occupant of the car was defendant, Vicente Meneses-Davila. On the agent's instructions, he opened the trunk. Approximately 250 pounds of marijuana were found wrapped in plastic bags. Being *Miranda*-advised that he had the right to remain silent, defendant did so.

### In the Courtroom

At trial, however, defendant told a story that, if true, would prove he thought the car he was driving contained clothing, possibly stolen, and not marijuana. This fact would exonerate him of the crime with which he was charged, one that requires a knowing and intentional possession of marijuana. For defendant's purposes, the jury did not have to believe his testimony, it being sufficient if it just cast a reasonable doubt as to the circumstantial proof that he knew what was in fact in the car. Defendant, a 32-year-old Mexican with a sixth grade education, a job, a wife, and six children, testified he was paid $30 to drive the car to a downtown El Paso location, he did not see the packages loaded into the trunk, he was told they contained clothing which he thought might have been stolen, he was never connected in any way with anybody dealing in marijuana, and he would not have driven the car if he had even thought there was marijuana in it.

**2.** Q [Prosecuting attorney] All right. Now, did you have occasion to speak with the Defendant at that time?

A [Agent] *He said absolutely nothing. When I asked him to open the trunk, he hesitated, then finally opened the trunk. As far as any verbal conversation, there was none.*

\* \* \* \* \* \*

Q Okay. *Did any conversation take place with the Defendant while he was being driven to the —*

A *No.*

### The Prosecutor's Comments

In an effort to impeach defendant's testimony, the prosecutor made four separate, intentional references to defendant's post-arrest silence: during the direct examination of the arresting officer, on cross-examination of defendant, on direct examination of a Government rebuttal witness, and in his final closing jury argument. In an apparent effort to reduce the impact of these comments by explaining that defendant remained silent because he was advised he had a right to do so, defense counsel himself made three references to defendant's silence: on cross-examination of the arresting officer, on redirect examination of defendant, and during closing argument.

### First Comment: Direct Examination of the Arresting Officer

The first reference to defendant's silence came during the Government's direct examination of the arresting officer.[2] No objections were made to the questions concerning defendant's silence. On cross-examination, the defense attorney asked the officer whether he had conversed with defendant in Spanish (defendant did not speak English) and what he had asked defendant. In response the agent again added that defendant "said nothing." [3]

### Second Comment: Cross-Examination of Defendant

The prosecutor's second reference to defendant's silence constituted a blatant violation of *Doyle*. After defendant took the stand and told the jury his version of the events leading to his arrest, the prosecutor cross-examined defendant directly about his

Q —office.

A As far as I know, no.

[R. 53–54, emphasis added].

**3.** Q [Defense attorney] Okay. Did you converse with the Defendant in Spanish?

A [Agent] Yes, I did.

Q And what did you ask him?

A I told him that I was a Customs officer, asked him to open the trunk. That was about as far as the conversation went. *He said nothing.*

[R. 62, emphasis added].

failure to tell the story to anyone before trial.[4] As before, the defense made no objection to this line of questioning. In order to counteract its effect, however, defense counsel on redirect brought out that no one had questioned defendant or given him a chance to explain what had happened.[5]

After brief testimony from another witness regarding investigation into the ownership of the white sedan, the defense rested.

### Third Comment: Government's Rebuttal Witness

The prosecution then called a Drug Enforcement Administration agent as a rebut-tal witness for the sole purpose of rebutting defendant's statement that none of the arresting officers had questioned him, and in the process again called attention to the fact that defendant was silent after he was arrested.[6] This third prosecutorial reference to defendant's silence also came in without objection.

### Fourth Comment: Closing Argument

The prosecutor did not refer to defendant's silence in his initial closing argument. The defense attorney made an effort to explain to the jury that defendant had been told he could remain silent.[7] He also criticized the Government for inadequately in-

4. Q [Prosecutor] Okay. Mr. Meneses, after you were apprehended, were you given or warned of your constitutional rights?
A [Defendant] I didn't understand them very well, no.
Q Did anybody attempt to question you, sir?
A No, only when I got there, there was two people from Immigration.
Q Okay. *Did you tell anybody before you testified here today the facts and circumstances as you have related them to us here today?*
A *No, sir.*
Q *This is the first time you told anybody?*
A *Yes, sir.*
[R. 126, emphasis added].

5. Q [Defense attorney] Mr. Meneses, Counsel just asked you if you had spoken to anybody and related the facts as you just now related them to the jury.
A [Defendant] With nobody.
Q Okay. Have you or have you not discussed this case with myself and Mr. Quijano?
A Yes, just only with you, yes.
Q Okay. Now, these other people that arrested you, did they ever ask you what had happened?
A The ones that arrested me, they just took me in the patrol car, and they didn't ask nothing, those that arrested me.
Q. Did they ever give you a chance to explain what had happened and how you came about to drive that car?
A No.
[R. 126–127].

6. Q [Prosecutor] Agent Aleman, you have heard the Defendant in this case a few minutes ago state that he was not questioned concerning the facts and circumstances of this case, is that correct?
A [Agent] No, it is not.
Q All right. Did you, in fact, question him?

A I did.
Q What type of questions did you ask him concerning the facts and circumstances?
A I asked him whether he wished to make a statement in regards to the seizure and to his arrest, and he—and *he told me that he had nothing to say to me.*
Q *And he never related this story that he has said today?*
A *Never. He never did.*
Q Okay. For what period of time was he in your presence?
A Oh, for about fifteen to twenty minutes.
Q All right. And where—where was this?
A This was at the Customs Patrol Office at the Bridge of The Americas.
Q All right. Did you yourself even take a personal history statement from him?
A Yes, I did, sir.
Q You did converse with him? Did you have any trouble communicating?
A Negative.
Q Did you communicate in Spanish or in English?
A Yes, sir, I did.
Q In Spanish?
A Yes, sir, I did. I read him his rights in Spanish, also.
Q Okay. *And he said nothing about being requested to help somebody pick up some clothes to—*
A *He said he had nothing to state in regard to the —you know—to that seizure or his arrest.*
[R. 134–135, emphasis added].

7. The defense attorney told the jury:

I think it's a sad commentary and the justice that's been presented to you in this particular case. The further testimony that we had was that he was arrested at that point; didn't make any comment. Well, ladies and gentlemen, I'm not going to ask you to—certainly not to put yourself in his shoes, but I want you to con-

vestigating the ownership of the white sedan.

In his closing summation, the prosecutor replied to the attacks on the Government's lack of investigation, and in the process called attention to defendant's post-arrest silence for the fourth time.[8] As with the prior three prosecutorial references, the defense made no objection to these comments.

### The Harmless Error Test: Chapman v. United States

The leading case in this Circuit analyzing the harmless error test as applied to *Doyle* violations is *Chapman v. United States,* 547 F.2d 1240 (5th Cir.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). Whether a prosecutor's erroneous comment is cured by the harmless error doctrine is a fact-dependent determination handled on a case-by-case basis. *Chapman* examined and harmonized the case law and found that our cases fall into three categories:

■ When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links

the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous.

■ When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, *i. e.,* when the prosecutor elicits that fact on direct examination and refrains from commenting on it or adverting to it again, and the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming.

■ When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.

547 F.2d at 1249–1250 (citations and footnote omitted).

---

sider that the type of person that the Defendant is.

We don't have a well-educated man. We've got a man that had to drop out of school in the 6th grade *to go to work.* We got a man that's worked hard all his life. He's 32 years old. He's got a wife and six children, and I'm not trying to invoke your sympathy by any means, but we have a man that's never ever been arrested before in his life. And the first thing he knows, he's being pulled over and stopped and handcuffed and taken down to the station down there, and he is informed by Agent Aleman—which fortunately, he was informed of this, that he *does not have to discuss this case* with anybody. And now they're trying to turn around and try to use it against him because he didn't. *Here he's told, while he's sitting there in handcuffs, by this officer that he doesn't have to say anything at all. And so when he doesn't say anything, they turn around and use that against him.*

Ladies and gentlemen, I would like you to consider the circumstances in which he found himself at that point, and I think that *may* explain why he waited until today to come in and present his case to you, to the twelve of you to listen to it and decide for yourself whether or not there's veracity in that statement.

[R. 154–155, emphasis added].

**8.** The prosecutor stated:

The investigation—and incidentally, contrary to what Mr. Severson [defense attorney] says, the investigation doesn't end with the trial of one Defendant here. This can be an on-going investigation. Any additional evidence—if we uncover any additional evidence as to who the individuals were on that particular date, *if the Defendant or anyone else told us who they were,* and we had apprehended them, they would be in the same situation. They would be tried, too. That investigation continues.

All right. Now, what I was trying to relate to you is it's not very pleasant to go through this experience. *So if you had all this additional information, why would you not make it available? They were complaining about the fact that we don't do an investigation, and then they are the only ones that have the information that would help the investigation. Why don't they come forward and tell us?* They don't think that Agent Aleman or the Customs Patrol Officers would be interested in that information and be interested in trying to get additional Defendants or the real culprits in a situation like this? *I would submit to you that's a little bit difficult to believe.*

[R. 167–168, emphasis added].

Reversible error results in the first two situations, but not the third. The paradigm case in the first category is *United States v. Harp,* 536 F.2d 601 (5th Cir. 1976). Defendants in *Harp,* on trial for escape from a federal prison, raised a "bizarre" defense. They contended that while their escape cavern was big enough for all ten of them, only one had planned to escape. When he found the others secretly drinking beer in his hiding place, he kidnapped them rather than jeopardize his escape scheme. In closing argument, the prosecutor "highlighted" the fact that when they were discovered, not one of them told prison officials that he had been kidnapped. No objection was made to the prosecutor's remarks. Although the Court considered the defense to be "transparently frivolous," it reversed, holding the comments to be plain error "[b]ecause the prosecutor's comments struck at the jugular of their story. . ." 536 F.2d at 603.[9]

*United States v. Impson,* 531 F.2d 274 (5th Cir. 1976), *cert. denied,* 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 803 (1978), is representative of cases in the second *Chapman* category. Impson was charged with possession of counterfeit currency found during the search of a car in which Impson was a passenger. The prosecutor asked the arresting officer if Impson had said anything upon arrest. The officer replied that he had not. On objection, the judge instructed the jury to disregard the comment. Defendant then testified that he had merely gone drinking with the car's driver and had no knowledge that counterfeit currency was hidden in the car. Despite the fact that reference to defendant's silence was brief and isolated, was not referred to in closing argument, and a curative instruction was given, the Court held it was *not* harmless, because Impson's defense was "not so implausible as to be dismissed out of hand," and because the Government's evidence, while substantial, was not overwhelming. 531 F.2d at 278.

*Chapman v. United States, supra,* is representative of that category of cases in which the error is held harmless. Chapman was found removing a crowbar from the door of a bank. The prosecutor elicited from the arresting officer that defendant had said nothing when he was arrested. The prosecutor did not comment on this at any time. Chapman then testified that he had lent his car to two hitchhikers who used his crowbar without his knowledge to attempt entry of the bank. Chapman claimed he was arrested while trying to recover his crowbar. The Court found defendant's uncorroborated story "transparently frivolous," and the evidence of his guilt overwhelming. Since the prosecutor had made only a single reference to defendant's silence without repeating it or linking it to defendant's exculpatory story, the Court held that the error was harmless.[10] Most of the cases finding harmless error involved an

**9.** *See also United States v. Johnson,* 558 F.2d 1225 (5th Cir. 1977) (Prosecutor's four references to defendant's post-arrest silence held reversible plain error, where comments went to the heart of the sole defense and encouraged the jury to believe the defense was fabricated); *Reid v. Riddle,* 550 F.2d 1003 (4th Cir. 1977) (In murder prosecution, defendant claimed self defense. The prosecutor asked defendant on cross-examination if he had told the police that he acted in self defense, and in closing argument the prosecutor reminded the jury that defendant answered that he had not. The Court found the error was not harmless. While the evidence against defendant was strong, there was no eyewitness, there was some evidence supporting defendant's claim of self defense, and the case turned entirely on defendant's credibility, which the prosecutor had attempted to improperly discredit); *United States v. Luna,* 539 F.2d 417 (5th Cir. 1976) (Single comment by prosecutor during closing argument, tying defendant's silence to the implausability of his defense, held reversible error, citing *Harp* ).

**10.** *Accord, United States v. Sklaroff,* 552 F.2d 1156, 1161–1162 (5th Cir. 1977) (following *Chapman* ), *cert. denied,* 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). *See also United States v. Davis,* 546 F.2d 583, 594–595 (5th Cir.), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977); *United States v. Wyckoff,* 545 F.2d 679 (9th Cir. 1976) (strongly criticizing Government for commenting on defendant's silence), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977).

isolated comment coupled with positive eyewitness identification of the defendant.[11]

### Applying the Harmless Error Test

■ It is apparent from the *Chapman* categorization of the case law that the prosecutor's comments at defendant Meneses-Davila's trial are not harmless, even under the plain error standard of review.

This case does not fit within *Chapman's* harmless error category. There was more than a single reference to defendant's silence. The repetition ensured that the prosecutor's point could not have been lost on the jury, for the trial lasted just one day.[12] The references to defendant's silence were linked with defendant's exculpatory story as early as the second reference (the cross-examination of defendant), and more clearly during the rebuttal testimony of the DEA agent and the prosecutor's closing argument. While the evidence of defendant's guilt was strong, it was not "overwhelming," nor was defendant's exculpatory story "transparently frivolous."

This case falls within both of the two *Chapman* reversible error categories. The first *Chapman* category mandates reversal where the prosecutor links defendant's silence to the implausibility of his exculpatory story. The prosecutor did that here. He implied that defendant's explanation was a recent fabrication, and used defendant's

failure to speak before trial to support that suggestion. Reversible error occurred whether or not defendant's testimony about his lack of knowledge that marijuana was in the car was unbelievable.

■ The case also falls in the second *Chapman* category requiring reversal. Defendant's story is not totally implausible and the indicia of guilt is not overwhelming. The only factor that might make this case at all close is the possible argument that the prosecutor's third and fourth comments, in examining the DEA agent on rebuttal and in closing argument, were invited by the defense.[13] The prosecutor called the DEA agent as a rebuttal witness to refute defendant's statement that no one had questioned him. Had defendant's statement been the first reference in the case to his silence, the questioning of the agent would probably have been permissible.[14] The prosecutor did not mention defendant's silence in his first summation. In final summation, however, he replied to the defense attorney's closing argument. It could be argued that this comment was also defense invited. Here again, however, the defense did not initiate the comments on silence, but only responded to the prosecutor's prior comments made during the trial.

While the comments by the defense provide some explanation for the prosecutor's last two comments on defendant's silence,

---

11. *See, e. g., Hayton v. Egeler,* 555 F.2d 599 (6th Cir. 1977), *cert. denied,* 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463 (1978); *Meeks v. Havener,* 545 F.2d 9 (6th Cir. 1976), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1977); *Jones v. Wyrick,* 542 F.2d 1013 (8th Cir. 1976), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1603, 51 L.Ed.2d 807 (1977).

12. *Compare Hayton v. Egeler,* 555 F.2d 599, 603–604 (6th Cir. 1977) (single isolated question and answer during the course of a long, 10-day trial, held harmless), *cert. denied,* 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463 (1978).

13. *See United States v. Doran,* 564 F.2d 1176, 1177 (5th Cir. 1977); *United States v. Lewis,* 524 F.2d 991, 992 (5th Cir. 1975), *cert. denied,* 425 U.S. 938, 96 S.Ct. 1673, 48 L.Ed.2d 180 (1976); *United States v. Taylor,* 508 F.2d 761, 763–764 (5th Cir. 1975). *See generally* 5 Am. Jur.2d *Appeal & Error* §§ 713, 717 (1962).

14. *See Doyle v. Ohio,* 426 U.S. 610, 619–620 n. 11, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (post-arrest silence can be used to contradict a defendant who claims he told the police his exculpatory story when arrested); *United States v. Blalock,* 564 F.2d 1180 (5th Cir. 1977); *United States v. Helina,* 549 F.2d 713, 719 (9th Cir. 1977) (defense contention that Government had failed to fully document its case and that defendant had fully cooperated with the Government opened the door for the prosecutor's question to defendant asking why defendant had not given certain records to the Government); *United States v. Fairchild,* 505 F.2d 1378 (5th Cir. 1975) (defendant's testimony that he had cooperated with the police held to have opened the door to prosecutor's questioning police regarding defendant's post-arrest silence).

the "invited error" defense is not open to the Government, since the prosecutor made the initial reference to defendant's silence.

Even discounting the comments that might be claimed to be defense invited, however, the prosecutor's other references mandate reversal.

### Harmless Error Conclusion

The trial in this case occurred on September 19, 1977, more than one year after the Supreme Court handed down its decision in *Doyle v. Ohio,* and over two years after the Court in *United States v. Hale* had prohibited comments on post-arrest silence in federal courts as a matter of its supervisory power. The prosecutor's repeated reference to defendant's post-arrest silence is plain error. The conduct was intentional, obviously meant to harm the defendant. The error in the present case was not harmless beyond a reasonable doubt. Defendant is entitled to a new trial free of constitutional error.

### Sufficiency of the Evidence

■ Since this ground of reversal permits the Government to retry defendant, we must reach defendant's sufficiency of the evidence argument, because the Government may not retry defendant if the evidence at the first trial was insufficient. *Burks v. United States,* —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

At the close of the Government's case, defendant moved for a judgment of acquittal under Rule 29(a), Fed.R.Crim.P., alleging the Government had failed to prove that defendant intentionally and knowingly possessed marijuana with the intent to distribute. The court denied the motion. Defendant did not renew it at the conclusion of defendant's evidence. Under these circumstances, review on appeal involves merely a determination of whether affirm-

ance of the conviction would entail a "manifest miscarriage of justice." *United States v. Juarez,* 566 F.2d 511, 512–513 (5th Cir. 1978).

In evaluating the sufficiency of the evidence, we must consider the evidence in the light most favorable to the Government, with all reasonable inferences and credibility choices made in support of the jury's verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ Viewed in this light, the largely circumstantial evidence was sufficient to establish defendant's knowledge and intent. A customs agent saw the white sedan drive to the border. He testified that it had only one occupant, the driver. The agent saw the driver get out and help load the plastic bags into the trunk of the car. The car then drove away. When pursued by an unmarked customs vehicle with siren and red light on, the white sedan at first continued without stopping, then stopped momentarily, and then accelerated again, driving along the side of the road as if looking for a side road on which to escape. When the car was finally stopped, defendant was the only occupant. In the trunk of the car was found 250 pounds of marijuana.

■■ The proof was sufficient to support a finding that defendant knew what was in the car.[15] The jury could consider defendant's flight as indicative of guilt.[16] Defendant's testimony that he suspected the packages contained something illegal but he did not think it was marijuana might be sufficiently probative to convict. Such deliberate ignorance is the same as knowledge for purposes of conviction under § 841(a)(1). *See United States v. Restrepo-Granda,* 575 F.2d 524, 528 (5th Cir. 1978), *approving United States v. Jewell,* 532 F.2d 697 (9th Cir.) (en banc), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188

---

**15.** *See United States v. Almendarez,* 534 F.2d 648, 649–650 (5th Cir.) (evidence of defendant's apprehension near Mexican border in the middle of the night driving a truck containing over 3,000 pounds of marijuana sufficient for conviction under § 841(a)(1)), *cert. denied,* 429 U.S. 977, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976).

**16.** *See, e. g., United States v. Alonzo,* 571 F.2d 1384, 1386 (5th Cir. 1978); *United States v. Caro,* 569 F.2d 411, 419 (5th Cir. 1978); *United States v. Myers,* 550 F.2d 1036, 1048–1051 (5th Cir. 1977).

(1976). Finally, intent to distribute could be inferred from possession of a large quantity of marijuana. *United States v. Johnson,* 469 F.2d 973, 977 (5th Cir. 1972).

The evidence sufficiently supported defendant's conviction, so that no manifest miscarriage of justice would ensue from an affirmance. He is not entitled to a reversal on the ground that he should have been acquitted as a matter of law. Thus, he is only entitled to a new trial because of the prosecutor's trial errors.

REVERSED AND REMANDED.