Jose **BUITUREIDA, Jr.** and **Enrique Buitureida, Jr.,** Appellants,

v.

**STATE of Texas,** Appellee.

No. 13–81–240–CR.

Court of Appeals of Texas, Corpus Christi.

Nov. 29, 1984.

Joseph A. Connors, III, McAllen, John Guerra, Edinburg, for appellants.

Ted Campagnolo, Brownsville, for appellee.

## OPINION

PER CURIAM.

This is an appeal from the convictions of Jose Buitureida, Jr. (Jose) and Enrique Buitureida, Jr. (Enrique) for the offense of murder. Appellants were indicted in a single instrument and tried together for the murder of an individual known as "El Columbiano." Both pled not guilty. Appellants were represented at trial by separate attorneys. It was agreed at trial that objections made by Jose's attorney were also made by Enrique's attorney. Both appellants were found guilty by a jury, and their punishment was assessed by the jury at imprisonment for fifty years each. On February 2, 1982, the trial court granted appellant Enrique's Motion for Leave to File an Out of Time Motion for New Trial.

Appellant Jose's corresponding motion was denied. All motions for new trial were subsequently denied, and this appeal was filed. We reverse.

On February 21, 1981, around 7:30 p.m., Alex Galvan, Javier Mendoza, and a man known as El Columbiano were on the front porch of Galvan's home in Brownsville, Texas. At about that time, a beige-colored car drove by with two people inside. The same car had already driven past once or twice before. The car was moving slowly as it passed the house. Galvan recognized the occupants as being involved in a fight with him earlier and went up to the car and threw a brick at it. At that point, the passenger drew a pistol and fired in the direction of Galvan's house. The car then speeded up and departed the area.

Two of the bullets hit the man known as El Columbiano; one striking him in the head, the other in the back. In court, Galvan identified Jose Buitureida, Jr. as the man who fired the gun from the car. He also identified Enrique Buitureida Jr. as the driver of the car. At trial, Mendoza identified Jose Buitureida Jr. as the person who fired the shots and Enrique Buitureida Jr. as being with him at the time. Mendoza also recognized appellants because they had beaten him and Galvan earlier that day. Both appellants presented alibi testimony.

On appeal, appellants are represented by separate attorneys. Three briefs are filed by appellants and one by the State. Appellants' "First Brief of Appellant Enrique Buitureida, Jr.," filed January 3, 1983, contains seven grounds of error and is filed by Ricardo Flores, Enrique Buitureida Jr.'s attorney from July 29, 1982 until December 30, 1982. On February 15, 1983, Mr. Joseph A. Connors, III, as attorney for Jose Buitureida, Jr. and Mr. John Guerra, as attorney for Enrique Buitureida, Jr., filed a single brief entitled "First Brief of Appellant Jose Buitureida, Jr. and Second Brief of Appellant Enrique Buitureida, Jr." This brief contains ten grounds of error, some of which relate solely to Jose's appeal, some of which relate to both appellants, and some of which appear to relate solely

to Enrique. Some of the grounds presented in this brief raise the same grounds of error raised in Enrique's first brief, only now, they are raised in regard to Jose. On August 15, 1983, appellants filed jointly a "First Supplemental Brief of Both Appellants." In it are appellants' eleventh through fifteenth grounds of error. These grounds relate to both appellants and presumably supplement appellants' February 15, 1983 brief. Since all briefs are timely, we will address all grounds of error raised thereby. See *Alfaro v. State*, 638 S.W.2d 891 (Tex.Crim.App.1982).

■ Appellant Jose does not challenge the sufficiency of the evidence to support his conviction. Through his first ground of error, Jose contends that the trial court erred in not charging the jury on the mistaken identity feature of the evidence in this case. Both Galvan and Mendoza identified Jose as the person who fired the shots that killed El Columbiano. They also both placed Enrique, Jr. in the car from which the shots were fired. The evidence presented at trial does not raise the issue of mistaken identity. Even if it had been raised, the Court's instructions on the presumption of innocence and the requirement that the jury find appellants guilty beyond a reasonable doubt or acquit them, adequately protected appellants' rights. *Wilson v. State*, 581 S.W.2d 661 (Tex.Crim. App.1979) (Opinion on State's Motion for Rehearing); See *Hill v. State*, 608 S.W.2d 932 (Tex.Crim.App.1980); and, *Roy v. State*, 627 S.W.2d 488 (Tex.App.—Houston [1st Dist.] 1981, no pet.). Appellant Jose's first ground of error is overruled.

Appellants, in their separate second and third grounds of error, both allege that the trial court committed reversible error by denying appellants their right to propound questions during effective and full cross-examination when the trial court refused to allow appellants to place the credibility and persons of Alex Galvan and Javier Mendoza in the proper context by introducing before the jury the juvenile records of these witnesses. During trial, Alex Galvan was recalled by the defense and the following

questions, objections and rulings were made on this issue:

Q Mr. Galvan, I'm going to ask you if at any time, as a result of proceedings against you, you have been convicted of a felony in this or in any other state or whether you have been, as a result of proceedings, confined to the—any juvenile correctional institute—

MR. JONES: Your Honor, may we approach the bench, again please?

THE COURT: *Counsel,* with regards to *juvenile proceedings,* as you know, they *are not admissible,* if any. [Emphasis added.]

MR. TOSCANO: My position, Your Honor, is that they are with regards to *trying to place this young man in the proper context.* [Emphasis added.]

* * * * * *

THE COURT: What is the purpose of asking about a juvenile proceeding, Counsel?

MR. TOSCANO: Yes, sir. Your Honor, we are not seeking to impeach this witness by the fact that he has been adjudicated a delinquent and has been ordered confined in the Texas Correctional Institute of Texas—for the purpose of impeachment, but he is a witness upon whose credibility this Jury must pass upon. He is a witness upon whose—how much weight they will give to his testimony. We want the Jury to understand that he is no alterboy. We want the Jury to understand what his background is, in order to intelligently reach a conclusion as to how much credence, how much weight, how much believability this young man, who has been incarcerated several times in his life as a result of several violations, serious of such a character that this Court or some other Court in Cameron County sent to the Texas Youth Correctional Institute.

THE COURT: That's not admissible, Counsel.

MR. TOSCANO: We take the position that it is and we would certainly respect the Court's ruling.

THE COURT: Unless the law has changed, Counsel, and you are prepared to convince me otherwise. *If this young man has been found to be a child that is engaged in delinquent conduct and wherefore has been sent to the Texas Youth Council, that matter is not relevant for impeachment purposes and by statute.* [Emphasis added.]

MR. TOSCANO: I'm not seeking to place him here for impeachment purposes. I think I made myself clear. *I'm seeking to give this young man's background to the Jury so that they may consider him in the proper context.* [Emphasis added.]

THE COURT: Have you got authorities to support your position at this time?

MR. TOSCANO: Not at this time. I thought it was not necessary, sir, but I will if necessary.

THE COURT: What is the state's position on the matter?

MR. JONES: He indicated he didn't want to impeach the witness and then proceeded to give a very good definition of what we understand being impeachment. Number two, as the Court pointed out, *the juvenile record is not admissible in Court.* Even the State can't elicit the Defense witness's record. *The juvenile record, of course, if any that this person has, is simply not admissible in front of this Jury for pusposes [sic] of impeachment or as Counsel for Defense put it, putting it in proper context or whatever.* [Emphasis added.] It's not admissible and the Court is correct in that ruling. I don't think that there are any cases to the contrary on that.

MR. TOSCANO: I don't have the citation before me, Your Honor, but if the Court wants to take a recess for that purpose, we will.

THE COURT: Your theory is that if this man is in general a bad person or criminal person, that you want the Jury to know that. Is that right?

MR. TOSCANO: Yes, sir, and not only by whatever purpose, how he was placed in that position. Just like he would be entitled to come in say, "I am an alterboy at the Catholic Church", so that the Jury

could say, "Well, now this young man apparently is a Christian, raised up in the proper religious atmosphere and we are inclined to give him much more believability than we would, *should the Court show us evidence that he is a delinquent and has been so adjudged and has been in the Texas Youth Council for commission of crimes of the character that will require the Court to so order that he be so detained.*" [Emphasis added.]

THE COURT: I know of no authority to allow that, Counsel, so your objection—the objection is sustained.

\* \* \* \* \* \*

THE COURT: Do you have any other questions of this young man?

\* \* \* \* \* \*

MR. TOSCANO: Nothing further from this witness. I do state to the Court that we do have some authorities upon which this question has been asked in good faith and —but, right now I do not have them here and I will try to present them to the Court and we ask the Court to reconsider.

THE COURT: Well, after the noon hour, you do that.

MR. TOSCANO: Yes, sir. At this point in time I don't want to belabor the point.

THE COURT: After the lunch hour you can bring some authorities to me and we will take a good look at them.

MR. TOSCANO: Yes, sir.

THE COURT: You may step down, Mr. Galvan.

(WITNESS STEPPED DOWN)

THE COURT: Call your next witness.

MR. TOSCANO: Your Honor, we may— may we complete our bill on this young man? May we complete it at this point in time?

THE COURT: Yes, sir.

MR. JONES: Due to the lateness of the hour we request that we move along with some more testimony.

MR. TOSCANO: We are going to recall the other juvenile for the same purpose and that's the same ruling with the Court.

THE COURT: Well, Counsel, let's move along with the case, then, before the case goes to the Jury.

MR. TOSCANO: May the record reflect that we would call Mr. Mendoza Menchaca, the juvenile? The same questions would be propounded to him and I assume the same objections would be made and the Court's ruling and position would be the same?

THE COURT: Same objection would be made, Counsel?

MR. JONES: Oh yes, Your Honor.

THE COURT: That would be the same ruling.

MR. TOSCANO: Same ruling and our exception that we would wish to perfect our bill on that.

THE COURT: Yes, sir ... All right. Now, bring the Jury in.

Appellants, through their formal Bill of Exception No. 1, set forth that:

"On December 20, 1979, the Juvenile Court of Cameron County, Texas committed said Alex [Galvan] to the Texas Youth Council for delinquent conduct arising out of an assault on Oct. 25, 1979. Alex was released on parole from the Texas Youth Council on Oct. 25, 1979. Alex did remain on said parole from the Texas Youth Council until Oct. 11, 1981, his 18th birthday."

Also set forth in this Bill was the statement that:

"Attached hereto are true and correct summaries of the juvenile records of the Juvenile Probation Department of Cameron County, Texas, concerning Alex and Javier. Those exhibits are marked as Defense Appellate Exhibits 2 and 3 respectively, and they are incorporated herein for all purposes."

These exhibits set forth numerous charges, and actions thereon, with regard to both Galvan and Mendoza. Galvan's record designates an "ACTIVE" status, dated 10–26–

79. Nowhere in the Bill is any reference, however, as to Mendoza's status.

Appellants allege, through their Bill of Exception, that the trial court erred in excluding the above facts from the jury because such exclusion prevented the jury from being able to properly pass upon the credibility of the witnesses and to determine how much weight should be given the testimony. Appellants also, for the first time, specifically allege that the exclusion prevented appellants from "impeach[ing] each said witness, showing bias, motive and prejudice to assist the State in the above entitled case with their testimony so that they would not be revoked and lose their status as parolees of the Texas Youth Council."

 Before we can rule on the merits of these grounds of error, we must first determine if appellants properly preserved their alleged error. At trial, appellants' counsel asked Galvan, a chief witness for the State, if he "had been convicted of a felony ... [or] confined to the—any juvenile correctional institute." It appears that, at this point, counsel was cut off by an objection from the State. The trial court and counsel for the defendants and the State entered into a discussion in which both the court and the State remarked that juvenile proceedings were not admissible. The State's objection was subsequently sustained.

While appellants' counsel never specifically questioned Galvan as to whether he was on parole as a result of any criminal activity he might have committed as a juvenile, requiring such a question to be asked in order to preserve error was not necessary under the circumstances. Asking Galvan if he had been placed upon parole for an offense, for which counsel was prevented by a court ruling from asking if Galvan had in fact committed, would be pointless. The trial court had already stated that juvenile proceedings were "not admissible."

"The essential policy underlying the sixth amendment right to confrontation is to give the accused an opportunity to cross examine the witnesses against him.

\* \* \* \* \* \*

Thus, extreme prejudice ensues from a denial of the opportunity to place a material witness *in his proper setting as regards his testimony.*

\* \* \* \* \* \*

Apparent then, is the fact that when the cross-examiner is improperly denied the opportunity to ask a question and receive the witnesses' answer for consideration by the factfinder, he may concomitantly be denied the right to establish facts which would illustrate the true circumstances bearing on the issue by extrinsic proof." [Emphasis added.]
*Harris v. State,* 642 S.W.2d 471 (Tex.Crim. App.1982); and authorities cited therein.

Here, counsel objected and stated, in essence, that he was inquiring into the witness' past criminal record in order to place the witness in his "proper context." We see little difference in the court in *Harris,* supra, allowing such questioning so that the witness could be placed in her "proper setting." As in *Harris,* without the testimony, the jury could not fairly apprise the weight and credibility it should place on the witnesses' testimony. Also, as in *Harris,* "the jury had a right to observe [the witnesses] under questioning in this regard[,]" and, if necessary, the defense would have been entitled to establish those facts set forth in their Bill of Exception. See *Harris,* at 477. We hold that appellants' objection properly places the issue of the admissibility of the juvenile record of Galvan and Mendoza before this Court.

We must now determine if appellants' Bill of Exception is adequate.

The record reflects that appellants first gave notice of appeal on June 11, 1981. On August 31, 1981, appellants filed their "First Motion for Extension of Time for Filing Bills of Exception," this motion being granted the same day and extending time to file until October 19, 1981. An Order approving appellants' Motion for Extension was entered on October 16, 1981.

Thereafter, on October 19, 1981, appellants filed their Formal Bill of Exceptions No. 1–7. These bills were not approved, with the notation of "not within my knowledge" on February 8, 1982. No bystander's Bills of Exception were filed.

Since appellants filed their motion for extension on August 31, 1981, we will apply those time restraints set forth in art. 40.09, Tex.Code Crim.Proc.Ann., prior to its revision effective September 1, 1981.[1] This provides that:

"Bills of exception must be filed with the clerk and presented to the trial judge within ninety days after notice of appeal is given.... A bill of exception will be deemed approved without qualification if it be not acted upon by the trial judge within a period of 100 days after notice of appeal is given and no extension of time for filing has been granted; provided, however, *if an extension of time for filing has been granted, a bill of exception will be deemed approved without qualification if it be not acted upon by the trial judge within a period of 10 days after the actual filing of the bill.*" [Emphasis added.]

Appellants' Bills of Exceptions number one through seven were timely filed, but were not timely ruled upon by the trial court. Since no action was taken upon appellants' bills of exceptions within the time prescribed by art. 40.09, the bills are deemed approved without qualification. *Herrin v. State*, 525 S.W.2d 27 (Tex.Crim.App.1975); *Damaris v. State*, 363 S.W.2d 464 (Tex. Crim.App.1963). This remains true despite the trial judge's late refusal of the bills. *Lair v. State*, 169 Tex.Cr.R. 220, 333 S.W.2d 389 (1960).

The approval of a bill of exception, without qualification, constitutes a certification by the trial court of the correctness of the language contained in the bill. *Skinner v. State*, 144 Tex.Cr.R. 21, 159 S.W.2d 878 (1942) (Opinion on Motion for Rehearing). However, if it is shown in another trial that the facts contained in the

Bill of Exceptions are not true, our judgment will not be binding in the cause as to the issues raised therein. *Damaris*, supra, (Opinion on State's Motion for Rehearing at 466.) We accept appellants' bills as approved and proceed accordingly. While it is improper to impeach a witness by proof of a prior juvenile record, *Barecky v. State*, 639 S.W.2d 943 (Tex.Crim.App.1982), appellants relay on *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), to support their contention that the trial court committed reversible error by refusing to admit the juvenile records of Galvan and Mendoza. In *Davis*, the Supreme Court stated:

"that the right to confrontation is paramount to the State's policy of protecting a juvenile offender."

*Davis*, 94 S.Ct. at 1112. "*Davis* does not require that we ignore the clear mandate of Article 38.29 in order to permit impeachment of general credibility." *Bilbrey v. State*, 594 S.W.2d 754 (Tex.Crim.App.1980). See *Thomas v. State*, 578 S.W.2d 691 (Tex. Crim.App.1979); and, *Warren v. State*, 514 S.W.2d 458 (Tex.Crim.App.1974). However, the Court of Criminal Appeals recognized in *Bilbrey*, that the refusal to allow the cross-examination of a witness about a juvenile probation *which had not expired,* so as to show motive and bias because of possible pressure upon the witness by the prosecution, violated the accused's right to confrontation.

We see little difference in the pressure that can be exerted by the State upon a witness placed upon juvenile parole rather than juvenile probation. "[A] parole ... is a release from imprisonment on specified conditions to be observed, the sentence remaining in effect during the liberty thus granted." *Ex parte Lefors*, 165 Tex.Cr.R. 51, 303 S.W.2d 394 (1957); see *Argon v. State*, 123 Tex.Cr.R. 151, 58 S.W.2d 108 (1933). While no showing is made as to what conditions were placed upon Galvan's parole, a parole by its very meaning implies that some sort of conditions exist. By pro-

---

1. 1965 Tex.Gen.Laws, ch. 722, p. 317, at 479. Effective September 1, 1981, this act was amended by 1981 Tex.Gen.Laws, ch. 291, § 108, p. 804.

hibiting appellants their right to fully cross-examine Galvan as to his criminal record and to develop testimony as to his parole status, the trial court committed reversible error. However, while appellants preserved their right to develop the same type of testimony with regard to Mendoza, no showing was made from which the jury could infer the possibility of undue influence to be exerted by the State against Mendoza. Appellant's second grounds of error are sustained, and their third grounds of error are overruled.

■ Jose's fourth ground of error complains that the trial court erred by denying his requested charge at the punishment phase "that the jury not consider current events in trying to determine what is a just punishment in the case." The record reflects that, during the course of this trial, an assassination attempt was made on the life of Pope John Paul II. It is with regard to this event that appellants' requested charge relates.

Contained in the Court's Charge at the guilt or innocence phase was the instruction that: "you must not consider, discuss, nor relate any matters not in evidence before you." Contained in the Court's Charge on Punishment, was the instruction: "Please remember all of the instructions the Court has previously given you and be governed thereby." Appellants were adequately protected by these charges. No error was committed in refusing the requested charge. Appellant's ground of error is overruled.

■ During the State's closing final jury argument, the prosecutor stated: "You got a situation where the Defendants would not talk to the police. They didn't want to talk to the police." Appellants' counsel objected. The objection was overruled, he then moved for a mistrial which was denied. The prosecutor later, in argument, stated: "if they [the appellants] have such a good reputation for being truthful and having a good reputation for truth and veracity, why not tell the police at the first opportunity." Appellants' counsel again objected and moved for a mistrial when the objection was overruled. The motion for mistrial was denied. Counsel again moved for a mistrial after the jury had retired. His motion was again denied.

Grounds of error five, six, seven, eight and nine, in the combined brief of appellants, complain that the prosecutor's remarks amounted to reversible error and that the trial court erred in both overruling "appellant Jose's objection[s]" and denying his motions for mistrial, since the comments violated appellants' rights and privileges against self-incrimination and to due process. While these grounds of error all speak only in terms of "appellant Jose's" objections and motions, two of the grounds relate to the prosecutor's comments as to Enrique's not telling the police about his alibi. Again, we note that Enrique's counsel had a standing objection with regard to everything to which Jose's attorney objected. These grounds of error are all briefed together and speak in terms of harm to both appellants. Accordingly, we will treat these grounds of error as relating to both appellants. We point out, however, that these grounds of error illustrate the problem inherent in filing briefs of this nature. While we are able to determine here the error raised by the grounds presented, we could easily have concluded that these grounds related solely to one appellant and that nothing was preserved by the other appellant as to these alleged errors.

Following the objection to the prosecutor's second comment on the appellant's failure to provide the police with their alibis, the trial court admonished the jury to "judge the guilt or innocence of the defendants on the evidence you heard, not on the failure to tell the police or not tell the police anything. They do have a constitutional right to be silent. Do not draw any inferences of guilt from their failure to make statements." The Court then instructed the prosecutor "to please do not comment or allude to the fact that defendants did not talk to the police at the time and allude or refer to an inference of guilt. . . ."

The State contends that these admonishments and instructions coupled with the fact that appellants invited the prosecutor's remarks render any error harmless. We cannot agree. Under *Chapman v. United States*, 547 F.2d 1240 (5th Cir.1977), cert. denied, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977), comments on a defendant's post-arrest silence falls into three categories:

[1] When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous.

[2] When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, i.e., when the prosecutor elicits that fact on direct examination and refrains from commenting on it or adverting to it again, and the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming.

[3] When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.

547 F.2d at 1249–1250 (citations and footnote omitted) 1; *United States v. Meneses-Davila*, 580 F.2d 888 (5th Cir.1978). "The infusion of 'harmlessness' into error must be the exception, and the doctrine must be sparingly employed. A miniscule error must coalesce with gargantuan guilt, even when the accused displays an imagination of Pantagruelian dimensions." *Chapman*, at 1250.

Here, the comments must fall into the first category. Not only were they repeated, but they were directly tied to appellant's alibi defense. There can be no question from the record before us that Enrique had no opportunity to make any comments amounting to pre-arrest silence, and, while Jose was not immediately placed under arrest, he was asked by the police to come to police headquarters and was not given a chance to make a statement until after he had been read his *Miranda* rights. It is also clear from the record that the remarks were not, in fact, invited. The defense of invited error is not open to the State since the prosecutor made the initial reference to the appellants' silence. *Meneses-Davila*, supra at 896. Appellants' testimony during examination did not invite the comment during closing argument.

The State's comments on appellants' post-arrest silence constitutes reversible error. See *Williams v. State*, 607 S.W.2d 577 (Tex.Crim.App.1980); *Hawk v. State*, 482 S.W.2d 183 (Tex.Crim.App.1972); *Brown v. State*, 101 Tex.Cr.R. 421, 275 S.W. 1069 (1925); *Conway v. State*, 625 S.W.2d 35 (Tex.App.—Eastland 1982, pet. ref'd). Furthermore, under the facts presented, we do not believe that the remarks were cured by the trial court's subsequent admonishment and instruction. See *Harrison v. State*, 491 S.W.2d 920 (Tex.Crim.App.1973). Since the trial court improperly overruled appellants' objections and since the harm was not subject to being cured, the trial court also erred in refusing to grant appellant's motion for mistrial. Appellants' fifth, sixth, seventh, eighth and ninth grounds of error are sustained.

In the tenth ground of error in appellants' combined brief, appellants allege that the trial court committed error by denying appellants' motion to discover appellant Enrique's own oral statements. Appellants were attempting to discover an oral statement made by Enrique at the time of his arrest. Officer Flores, of the Brownsville Police Department, testified that, "We went to his residence. We knocked on the door. As soon as we opened the door a man stepped out. We

identified ourselves, we told him that and he identified himself as Mr. Enrique Buitureida Junior and we told him there was an outstanding warrant for him. At this time this gentleman turned around, placed his hands behind his back and said, *'I was waiting for you.'"* [Emphasis added.]

During the pre-trial hearing, the State denied that the statement was ever written down in a manner subject to discovery by appellants. Regardless of the character of statement, appellants were not entitled to discover a fact already known to them. *Harris v. State*, 453 S.W.2d 838 (Tex.Crim. App.1970). Appellants' tenth ground of error is overruled.

 Appellants, in their eleventh, twelfth, thirteenth, fourteenth and fifteenth grounds of error, complain that the trial court erred in the submission of a charge on alibi which they contend shifted the burden from the State to appellants. They also allege in these grounds of error that the trial court erroneously charged that the jury should find appellants not guilty if they have a reasonable doubt as to the presence of appellants at the place where the offense was committed, if one was committed. Appellants contend that the charge should have charged that appellants must prove their alibi defense by a preponderance of the evidence. That part of the court's charge of which appellants now complain, reads:

"A defense raised by the Defendants in this case is what is known as an alibi, that is, that if the offense was committed, as alleged, the Defendants were, at the time of the commission thereof, at another and different place from that at which such offense was committed and, therefore, was not and could not have been the person who committed the same. Now if you have a reasonable doubt as to the presence of the Defendants at the place where the offense was committed, if an offense was committed, at the time of the commission thereof, then you will find the Defendants not guilty."

First, we note that the charge also instructed the jury that:

"The burden of proof in all criminal cases rests upon the State throughout the trial, and never shifts to the defendant. All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. If you have a reasonable doubt as to any element of the offense after considering all the evidence before you and these instructions, you will acquit the defendant."

Appellants' contentions have previously been considered and disposed of by the Court of Criminal Appeals. *Swinney v. State*, 529 S.W.2d 70 (Tex.Crim.App.1975); See *Gallaher v. State*, 28 Tex.Crim. 247, 12 S.W. 1087 (Court of Appeals 1889); *Bautista v. State*, 632 S.W.2d 846 (Tex.App.— Houston [14th Dist.] 1982, pet. ref'd). The charge given, in the case at bar, correctly charged the jury on the defense of alibi. Appellants' eleventh through fifteenth grounds of error are overruled.

 Appellant Enrique, in his first separate ground of error, contends that the trial court's refusal to grant his Out-of-Time Motion for New Trial, upon the ground of newly discovered evidence, constituted an abuse of discretion. We disagree. A motion for new trial based upon newly discovered evidence is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a showing of clear abuse of discretion. *Ayers v. State*, 606 S.W.2d 936 (Tex.Crim.App. 1980). To establish that such an abuse exists, the record must show that:

"(1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial;

(2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence;

(3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and,

[(4)] the new evidence is probably true and will probably bring about a different result on another trial."

*Ayers,* at 941.

■ While the testimony offered at his motion for new trial is different from that offered at trial, this factor alone will not warrant the granting of a new trial. Here, Enrique contends, that after the trial, he discovered 1) that there were witnesses who would be willing to testify to the fact that he was not present at the time of the shooting (this would merely be cumulative of his alibi testimony); 2) appellant Jose Buitureida, Jr. was not totally truthful when discussing the case with his attorney (appellant has not established that this fact was either unavailable or not discovered due to lack of diligence); 3) that Enrique's cousin Roberto Buitureida was the driver of the car in question (again appellant has not shown that this was not discoverable through the use of due diligence). The key witnesses at the hearing either testified at appellants' trial or were not shown to be unavailable had they been called to testify. The testimony of appellant's trial attorney on these matters is not determinative.

We have reviewed all the evidence presented by appellant at the hearing on his Out-of-Time Motion for New Trial and find that the trial court did not abuse its discretion in denying appellant's motion for new trial. Enrique's first ground of error is overruled.

Appellant Enrique's fourth, fifth, sixth and seventh grounds of error attack the sufficiency of the evidence to support the conviction in that: 1) there is insufficient evidence to infer that Enrique should have anticipated Jose's shooting of the victim; 2) that Enrique, acting with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Jose in committing the offense; 3) that Enrique shot and killed the victim.

■ The court charged the jury on the law of parties. A person is criminally responsible for an offense committed by the conduct of another person if he acts with the intent to promote or assist the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person to commit the offense. Tex.Penal Code Ann. § 7.02 (Vernon 1974).

■ The testimony of Galvan and Mendoza place Enrique as the driver of the vehicle from which the victim was shot. The same car drove by the scene of the shooting as many as three times before Jose reached his arm out the window and shot the gun resulting in the death of the victim. On the final pass by the house, the vehicle was proceeding at a slow rate of speed. Following the shooting, the car speeded away. Galvan and Mendoza also testified that, earlier on the day of the shooting, Enrique had been involved in a fight with Galvan and Mendoza. There is also the testimony of the police officers to the effect that, when they approached Enrique to arrest him, he turned around, offered himself for handcuffing and stated, "I was waiting for you." We find the evidence sufficient to support the conviction of Enrique as a party to the offense. His fourth through seventh grounds of error are overruled. See *Flores v. State,* 491 S.W.2d 144 (Tex.Crim.App.1973); *Garza v. State,* 149 Tex.Cr.R. 359, 194 S.W.2d 406 (1946).

We have considered all grounds of error raised by appellants through this appeal. Grounds of error two and three in both the First Brief of Appellant Enrique Buitureida, Jr. and the combined brief of appellants are sustained. Grounds of error five, six, seven, eight and nine of appellants' combined brief are also sustained. All other grounds of error are overruled.

The judgment of the trial court is REVERSED and the cause REMANDED for a new trial.