Ramon Robledo GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–93–270–CR.

Court of Appeals of Texas,
Corpus Christi.

June 30, 1994.

Richard Gould, Edinburg, for appellant.

Rene Guerra, Theodore Hake, Edinburg, for appellee.

Before KENNEDY, DORSEY and GILBERTO HINOJOSA, JJ.

## OPINION

KENNEDY, Justice.

A jury convicted Ramon Robledo Garcia of possession of more than 50 but less than 200 pounds of marihuana. The judge assessed punishment at six years' imprisonment. We reverse and remand for a new trial.

Employees at United Parcel Service's McAllen office, performing a routine check of parcels containing contents valued at more than $100, discovered what appeared to be contraband in a box deposited at their office for shipping. That box and another delivered at the same time purportedly contained leather jackets and belts. The boxes were being shipped from Oscar Ramirez in San Benito, Texas to addresses in Garland, Texas. The UPS employees notified United States Customs officials, who in turn summoned officers from the Combined Drug Enforcement and Special Crimes Task Force. One of the officers brought a drug-sniffing dog with him. The dog alerted the officers to the presence of contraband in both boxes.

As the officers were wrapping up their investigation of the two boxes, UPS employees informed them that the two individuals who had brought the boxes of contraband were back with another box. One of the men stayed in the car while the other individual brought in a third box, also being shipped from Oscar Ramirez to an address in Garland. The officers arrested the individual who brought in the third box, Ramon Robledo Garcia.

The drug dog alerted on the unopened third box. The officers arrested Garcia. They got a search warrant to open the third box. Like the others, the third box con-tained bundles of marihuana wrapped in fabric softener sheets and plastic wrap, surrounded by buttered popcorn and blown-in foam insulation. Garcia expressed no surprise or emotion of any kind after being told the box contained marihuana.

The boxes were weighed at UPS. They weighed, respectively, 36, 43, and 51 pounds. The UPS supervisor estimated that no more than three to four pounds of the weight came from packing materials. One of the officers actually weighed the marihuana alone, however; the bundles totalled, respectively 14.5, 23.5, and 28.5 pounds. The third box, the one officers saw Garcia carrying, was the heaviest.

■ We begin by looking at the end of the trial. By point of error five, Garcia complains that the court erred by permitting the State to comment adversely on his post-arrest silence. Garcia failed to preserve this complaint by objection. We may still reverse for unobjected-to argument error if the argument was so prejudicial that an instruction to disregard would not have cured the harm. *Nichols v. State*, 754 S.W.2d 185, 199–200 (Tex.Crim.App.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989).

We have held that comments on a defendant's post-arrest silence fall into three categories. *Buitureida v. State*, 684 S.W.2d 133, 142 (Tex.App.—Corpus Christi 1984, pet. ref'd); *see also Thomas v. State*, 812 S.W.2d 346, 350 (Tex.App.—Dallas 1991, pet. ref'd). We adopted these categories from a Fifth Circuit case:

■ When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous.

■ When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, i.e., when the prosecutor elicits that fact on direct examination and refrains from commenting on it or advert-ing to it again, and the jury is never told that such silence can be used for impeach-

ment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming.

■ When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.

*Buitureida*, 684 S.W.2d at 142 (citing *Chapman v. United States*, 547 F.2d 1240, 1249–50 (5th Cir.1977), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977) (citations omitted)). Courts have since held that the harm from such errors can sometimes be cured by instructions to disregard. *Waldo v. State*, 746 S.W.2d 750, 753–54 (Tex.Crim.App. 1988); *Juhasz v. State*, 827 S.W.2d 397, 405 (Tex.App.—Corpus Christi 1992, pet. ref'd). We must view the allegedly erroneous statement in the context of the entire argument. *Drew v. State*, 743 S.W.2d 207, 220 (Tex. Crim.App.1987).

■ Garcia's complaint on point five arises from this passage in the State's argument:

[b]ut how do you explain the time away when you just, well, I got drunk and I don't know what happened and I just don't know what happened. Something happened that day, I wonder what happened. Maybe they were busy getting the boxes ready, taking them different places and delivering them. It's a business, it's just what it is, it's just a business and if you get caught, well, pay a lawyer to defend you and you keep on going about your business. You don't talk to people, you don't explain yourself. You've got a right to remain silent but nobody tells you you got to. But, since you didn't act like somebody at least to be completely innocent had no earthly idea that there's something going on. Most people, I think it's fair to say that most people, if they're doing something perfectly innocent, have nothing to feel guilty about, *suddenly have a policeman come up behind you, grab you and put you under arrest, open a box and there's marijuana and you're just going to stand there and, okay, I'm not going to say anything, we're just going to keep, that's no logic. People don't behave that way, innocent people don't behave that way.* Mr. Garcia wants you to believe that he got up, lifted his hand under oath and told you what he wanted you to believe that Mr. Garcia also admitted that at least once in his life he thought he was, well, he was convicted of breaking into somebody's house and stealing from them. That's not what an honest person does. Now, why is he suddenly honest, particularly now I don't know. Is he? I don't think he is. I don't think anybody is as naive and well, it's like this and has no explanations, no reason, willing to get in a car with somebody who's practically a stranger, carry a box in, doesn't why, doesn't ask what are we doing, just does it. It's not logical, people don't behave like that.

(emphasis added). The State argues that the prosecutor's statement regarding Garcia's silence is vague as to when he was silent. In the context of the argument, however, the comment regarding the behavior of innocent people clearly refers to silence after arrest.

The prosecutor's comment falls into the first category from *Buitureida*. Though this is the only reference in argument to post-arrest silence, it recalled the prosecutor's repeated questions on the issue while cross-examining Garcia. He said he did not assert his innocence to the police because "I felt that if I said something about this guy here, you know, then he's going to go back and tell the others and then with this guy sitting right next to me in jail and all that, something could've happened." He also testified that he did not say anything upon his arrest because he had a bad hangover and could not talk. The prosecutor's comment in argument is a direct assault on Garcia's constitutionally protected right to remain silent after arrest. *See Waldo*, 746 S.W.2d at 754. The prosecutor blatantly sought to use Garcia's silence to undermine his testimony and to imply guilt.

We must now examine whether the prosecutor's improper argument harmed Garcia. We do so by examining the sufficiency of the evidence to see if it unfairly led to his conviction. Pursuant to point of error one, we also

must review to see if the evidence is sufficient to support his conviction.

■ In reviewing a sufficiency challenge, we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989), *overruled on other grounds by Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991). As this trial occurred well after *Geesa*, we do not use the reasonable hypothesis analytical construct to examine the circumstantial evidence tying Garcia to the marihuana. *Id.* at 163–165. We apply a pure *Jackson* analysis. *Id.* at 155–162. We consider unobjected-to hearsay testimony no differently than other testimony. *Fernandez v. State*, 805 S.W.2d 451, 453–56 (Tex.Crim.App.1991). The jury, as the factfinder, is the exclusive judge of credibility, weight, and balance of testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim.App.1981). The jury may accept or reject all or part of any witness's testimony. *Id.*

■ We measure the sufficiency of the evidence against the indictment as incorporated into the jury charge. *Benson v. State*, 661 S.W.2d 708, 715 (Tex.Crim.App.1982) (opinion on rehearing), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). The court charged the jury on possession only, not on joint possession or on the law of parties. The court charged the jury that it could find that Garcia possessed marihuana if he had actual care, custody, control, or management of the drug, knowing that he possessed it or intending to possess it.

■ To show possession, the evidence must affirmatively link the defendant to the contraband by showing the indicia of possession set out in the charge. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985); *Garza Gonzalez v. State*, 783 S.W.2d 774, 776 (Tex.App.—Corpus Christi 1990, no

pet.).[1] The possession need not be exclusive, but the evidence must link the defendant to the drugs. *McGoldrick*, 682 S.W.2d at 578. More than mere presence near drugs is required, particularly when there are many people present or in possession of premises. *Estrada v. State*, 643 S.W.2d 753, 756 (Tex. App.—San Antonio 1982, no pet.). Courts have considered factors including 1) the defendant's presence when a search warrant was executed; 2) whether the contraband was in plain view; 3) the defendant's proximity to and the accessibility of the narcotic; 4) whether the defendant was under the influence of narcotics when arrested; 5) whether the defendant possessed other contraband when arrested; 6) whether the defendant made incriminating statements when arrested; 7) whether the defendant attempted to flee; 8) whether the defendant made furtive gestures; 9) whether there was an odor of the contraband; 10) whether other contraband or drug paraphernalia was present; 11) whether defendant owned or had the right to possess the place where the drugs were found; and 12) whether the place the drugs were found was enclosed. *Villarreal v. State*, 865 S.W.2d 501, 503–04 (Tex.App.— Corpus Christi 1993, pet. ref'd).

■ There is no question that Garcia controlled a box containing marihuana. The disputed issue is whether his possession was knowing or intentional. The boxes were being sent to Garcia's hometown, despite the fact that Garcia himself planned to return home within a day or so. The boxes purportedly contained leather jackets, an item Garcia's fiancee in Garland sewed. Garcia displayed no surprise when arrested for marihuana possession; rather, he hung his head.

He testified that he had driven a dump truck from Garland to the Valley for his brother-in-law; he said that neither the $150 nor the free return transportation he expected for delivering the truck had materialized despite his repeated requests. His brother-in-law's brothers told him that he would not get his money until they got some. The

---

1. The case law governing review of possession convictions is rife with references to the pre-*Geesa* reasonable hypothesis standard. Though that standard is no longer applicable, the requirement of affirmative links persists in possession cases.

following exchange also occurred on cross-examination:

A. ... I do know for a fact that as I mentioned to you and mentioned to [the jury] is that all I've done is brought a dump truck down here, you know, for that matter I've been crucified for something that wasn't even mine.

Q. You carried it in, didn't you?

A. Yes, I did.

Q. You did have possession of it? You had possession of that box at one point in your life even if it was only for a few minutes? That right?

A. Yes, ma'am.

Q. Okay. And you didn't have to pick up that box and take it in?

A. Well, I didn't have to, you know.

Q. Okay. You had a choice in the matter. Nobody put a gun to your head?

A. Well, the only options why I took it in there was cause (sic) I wanted to go take it in there so they could send me on my way back to Garland. I wanted out of there.

He testified that Sergio Gonzales was to drop him off at the bus station after they dropped off the package. He also testified that he went to the UPS office only once, when he was arrested, contradicting the UPS employee's out-of-court statement that he was the same person who brought in a box earlier. His brother-in-law was paying for his attorney. Though Garcia denied seeing the marihuana in the box or knowing that it was there, the jury could have determined that he was not fully credible, rejected his protestations of innocence at trial, and inferred that he knew that the boxes contained marihuana. Though the evidence is not wholly conclusive, reasonable minds could find possession. We overrule point one.

 By his second point of error, Garcia contends that insufficient evidence supports the amount of marihuana in the conviction. He was convicted of possessing 50–200 pounds. The State bore the burden of proof on the weight issue. *Marroquin v. State*, 746 S.W.2d 747, 749–50 (Tex.Crim.App. 1988). The UPS documents show that the

boxes weighed 36, 43, and 51 pounds. The UPS employee testified that the packing materials for all three boxes totalled only three to four pounds. The UPS employee's speculation about the weight of the packing materials is seriously undermined by the Edinburg Police Department's evidence inventory report (signed by the testifying officer, offered by the State, and admitted) that the marihuana itself weighed much less—14.5, 23.5 and 28.5 pounds.

The evidence ties Garcia to possession of all three boxes only inferentially. The evidence showed that, on the first trip, he brought a box in at the same time another box was brought in. All three boxes had the same declared contents and sender. There was no direct evidence that Garcia exercised any actual care, custody, control, or management over the box that he did not carry into the UPS office. There is no evidence regarding Garcia's position in the car relative to the box he did not carry.

The State argues that the UPS weights of the boxes support the jury finding even if Garcia possessed only two boxes. Based on the UPS weights for the lighter of the first boxes and the third box, the jury could justifiably conclude that Garcia possessed between 50 and 200 pounds of marihuana (36 + 51 − 3 = 84). As discussed, the weight of the marihuana alone provides a different scenario. Using the police weights of the marihuana, the combination of the weights of the heavier two boxes would support the jury's verdict, but there is no evidence as to which of the first two boxes Garcia carried. This void is critical because the combined weight of the marihuana varies significantly depending on which of the first two boxes we consider (14.5 + 28.5 = 43 pounds or 23.5 + 28.5 = 52 pounds).

We find that the jury, faced with disparate weights, could have rejected the police weights and accepted the UPS weights and estimate. This would provide sufficient evidence to support conviction for possession of between 50 and 200 pounds.[2] We overrule point two.

---

2. We would not acquit Garcia even if the evidence were insufficient to support the finding of

50–200 pounds. The court also charged the jury on the lesser-included offense of possession of

Our review of the evidence has lent some support to both sides. It has shown a sustainable conviction; it has also shown that the evidence, while sufficient, is not so overwhelming that the prosecutor's improper argument could not have affected reasonable minds. An instruction to disregard the argument would not have cured the harm here. We sustain point five.

Because we cannot say beyond a reasonable doubt that the erroneous argument did not contribute to Garcia's conviction, we must reverse. TEX.R.APP.P. 81(b)(2). Because we have found the evidence otherwise sufficient to support the conviction, we remand for a new trial.

---

between five and fifty pounds; we can reform convictions to reflect lesser-included offenses. See *Bigley v. State,* 865 S.W.2d 26, 27–28 (Tex. Crim.App.1993). There is clearly enough evidence to convict Garcia of this offense; he possessed between five and fifty pounds of marihuana regardless of which of the first boxes he carried or, indeed, whether he carried one of the first boxes at all.