**Glenn Charles LEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–95–175–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 1, 1996.

Discretionary Review Refused
Nov. 20, 1996.

Nathaniel G. Rhodes, Corpus Christi, for appellant.

Robert E. Bell, Criminal District Attorney, Edna, Jim Vollers, Austin, for appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

YAÑEZ, Justice.

Glenn Charles Lewis was tried by a jury after pleading not guilty to the offense of driving while intoxicated. The jury found Lewis guilty of the offense and assessed punishment at 10 months confinement in county jail and a fine of $2,000. By five points of error, he appeals the conviction.

Appellant was arrested around midnight of July 17, 1993 while driving in a Suburban with his son. The arresting D.P.S. officer testified that he first observed appellant travelling at approximately 80 miles per hour on a 55 mile per hour road. After pulling over appellant and asking him to exit his vehicle, Officer Masiel testified that appellant walked stiffly and slowly, swayed, and had slurred speech. After detecting a "strong odor of alcohol on his breath," Masiel stated he performed a Horizontal Gaze Nystagmus test, and two field sobriety tests, all of which appellant failed. Appellant refused to take a breathalyzer test. Masiel then arrested appellant. No blood test was taken and there is no videotape of the appellant on the night of the arrest.

Appellant's version of the events contradicted the State's. Appellant testified that he was not speeding when he was pulled over. He admitted that his breath may have smelt of beer that night, but that he had only been drinking non-alcoholic beer. He also testified that he failed the two balance-oriented field sobriety tests because he had injured his ankle a few days before the evening of the arrest, and was therefore unable to stand on it for any length without pain and discomfort.

In his first point of error, appellant claims that the trial court erred in refusing to allow the defense a complete cross-examination of the State's witnesses. Appellant wanted to impeach two officers in front of the jury by testing their ability to smell the difference between alcoholic and non-alcoholic beers by filling nine cups (some with alcoholic beer, others with non-alcoholic beer), then asking the officers to smell the cups and distinguish them. Appellant's contention was that they could not do so, and therefore, the State's theory that appellant poured alcoholic beer into non-alcoholic beer bottles while driving was untenable. The court did not allow appellant to conduct this demonstration in front of the jury. Appellant preserved error by way of an oral bill of exception.

Two officers at the scene of the arrest testified that they smelled a strong scent of alcohol on appellant's breath, in his car, and emanating from an empty bottle of Coors Cutter (a non-alcoholic beer). Officer Janica also testified that inside appellant's vehicle was an ice chest with cold bottles of both alcoholic and non-alcoholic beer. As part of the State's case, the officers testified about a test performed outside the courtroom in which they poured an alcoholic beer into an empty non-alcoholic beer bottle, then poured it out. Appellant did not object to the testimony.

On cross-examination, the defense questioned witnesses several times regarding their ability to distinguish between the scent of alcoholic versus non-alcoholic beer. He was able to ask the officers if they had ever smelled Coors Cutter, and raise the difficulty of pouring beer from a can into a beer bottle, as the State implied appellant had done that night. In fact, appellant was able to ask numerous questions regarding the State's

theory. The trial court did not limit appellant's oral cross-examination of the officer's at any point with regard to their prior testimony. Officers Masiel and Janica would only state that they knew the smell of alcohol and could detect it if he smelled it. Appellant's counsel then tried to conduct a "sniff test" in front of the jury whereby he would fill nine cups, three with non-alcoholic beer and six with alcoholic beer, and see if he could distinguish them. The court denied him the opportunity.

 In order to be admissible, an experiment or demonstration must be conducted under conditions that are similar to the event to be duplicated. *Cantu v. State,* 738 S.W.2d 249, 255 (Tex.Crim.App.), *cert. denied,* 484 U.S. 872, 108 S.Ct. 203, 98 L.Ed.2d 154 (1987). The trial court has discretion to admit or exclude experiments or demonstrations, and appellate review is limited to whether the trial court abused its discretion. *Id.*

 The "sniff test" proposed by the defense is analogous to the in-court demonstrations offered, but rejected by the Fifth Circuit in *U.S. v. Torres,* 537 F.2d 1299 (1976), and its progeny. *See also, United States v. Vallejo,* 541 F.2d 1164 (1976); *United States v. Cantu,* 555 F.2d 1327 (1977). In *Torres,* the arresting officer in a drug possession trial testified that he searched the defendant's vehicle after smelling marijuana. On cross examination, the defense attempted to test the arresting officer's ability to smell marijuana by offering an in-court experiment. The defense wanted to offer different bags, some containing herbs, and some containing marijuana, to illustrate whether the officer could distinguish them. The Fifth Circuit, in refusing to find that the court abused its discretion in prohibiting such a demonstration, determined that the conditions proposed in the test differed substantially from those existing at the time the officer smelled the marijuana in the defendant's car. This reasoning was reiterated as a basis for denying similar in-court demonstrations in *Vallejo,* 541 F.2d at 1164, and *Cantu,* 555 F.2d 1327.

We find that the appellant's sniff test was not substantially similar to the events of that evening to find them probative. The State's theory did suggest that appellant poured real beer into non-alcoholic beer bottles. However, the officers never claimed to be able to distinguish between the odors of several bottles in a row. They merely stated that they recognized the odor of alcohol on appellant's breath, in the vehicle, and in a near empty bottle. Their testimony regarding their own "test" simply illustrated their conclusion that alcoholic beer poured out of bottle left a significant, distinctive odor. Any demonstration in front of the jury of their ability to distinguish between full cups of beer would be irrelevant and misleading to the jury. Moreover, appellant had already conducted a thorough cross-examination of the witness prior to his request to conduct the demonstration. The trial court did not abuse its discretion in excluding the demonstration. Point one is overruled.

Appellant contends in his second point that the court erred in allowing the prosecution to introduce evidence of his prior DWI conviction at the guilt/innocence phase of the trial. Appellant argues that the prosecution's mention of his 1987 conviction for driving while intoxicated had no probative value, and was highly prejudicial. The State contends that evidence regarding the prior conviction was necessary to refute a false impression created by the appellant when he testified, and was therefore probative with regard to appellant's credibility.

We first examine the context in which the evidence regarding the prior DWI conviction was mentioned. The appellant waived his privilege against testifying and took the stand. On direct examination, his attorney questioned him about the sequence of events that evening, and in that context, asked him "had you had anything alcoholic to drink up to that time?" Appellant responded "No. I had stopped and bought me a Coors Cutter. I knew I was going to be driving, and I will not drink and drive."

In a hearing outside the jury's presence, the prosecution sought the court's permission to introduce evidence that appellant had in fact been convicted of driving while intoxicated in the past. The State argued that it was

allowed to impeach the appellant by questioning him about his prior DWI conviction on the grounds that the appellant had given the false impression that "he's not the kind of guy that will drink and drive." The defense objected to any mention of appellant's criminal record, arguing that the State mischaracterized the intent and effect of appellant's testimony. Essentially, the defense insisted that appellant simply meant that, as of the evening in question, he was of the mentality that he would not drink and drive. They argued further that, introducing evidence of the appellant's DWI conviction several years prior to this arrest does not refute his statement pertaining to his attitude on the date of this offense.

The court ruled that the State could cross-examine appellant about his prior conviction only to the extent necessary to clarify the "false impression" made by the appellant. On cross-examination, the prosecutor referred to the appellant's answer above, then asked "Isn't it true that back in 1989 you were convicted of driving while intoxicated?" Appellant's counsel reiterated his objections to both the relevancy and prejudicial effect of that line of questioning. The court overruled both objections. Appellant admitted that he had been convicted (in 1987), then explained "and I learned my lesson, and that's why I made the comment here, 'I will not, at this day and time.' And in parenthesis, 'I will not, in this day and time, drink and drive.'"

At the conclusion of the trial, the court gave the jury the following limiting instruction,

You are instructed that certain evidence was admitted in evidence before you in regard to the defendant's having been charged and convicted of an offense other than the one for which he is now on trial. Such evidence cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the weight you will give his testimony, and you

will not consider same for any other purpose.

As with any other witness, the accused puts his character for veracity at issue when he chooses to testify before the jury, and in so doing, he may be impeached in the same manner as any other witness. *Hammett v. State*, 713 S.W.2d 102, 105 (Tex.Crim. App.1986). Among the limitations on the extent to which a witness may be impeached, however, is the general rule that evidence of prior criminal conduct shall not be admitted unless the crime was a felony or one involving moral turpitude, regardless of punishment, and the court determined that the probative value outweighs its prejudicial effect on a party. TEX.R.CRIM. EVID. 609.[1] An exception to the general rule applies when a witness makes statements concerning his past conduct that suggest he has never been arrested, charged, or convicted of any offense. *Delk v. State*, 855 S.W.2d 700, 704 (Tex.Crim.App.), *cert. denied*, 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *Prescott v. State*, 744 S.W.2d 128, 131 (Tex.Crim. App.1988); *Hammett v. State*, 713 S.W.2d 102, 105 (Tex.Crim.App.1986); *Ochoa v. State*, 481 S.W.2d 847, 850 (Tex.Crim.App. 1972). Where the witness creates a false impression of his past conduct, he "opens the door" on his otherwise irrelevant criminal history, and opposing counsel may expose the falsehood. *Delk*, 855 S.W.2d at 704.

In *Hammett*, the defendant was arrested for driving while intoxicated. The parties had contradictory versions of the events. On direct examination, defense counsel (apparently under the mistaken belief that it would come into evidence on cross-examination) asked the defendant if his prior public intoxication conviction was the only conviction in his record for that offense. The defendant answered "Yes, sir." The trial court allowed the state to introduce evidence of his convictions for "other" offenses on the ground that the defendant had given a false impression that he had never been arrested for anything else. The court of appeals affirmed the trial

1. Neither party contends that his prior conviction was admissible under this rule. His conviction under Tex.Rev.Civ. Stat. Ann. 6701-l was not a felony offense, and drunk driving is not consid-

ered a crime involving moral turpitude. *Stephens v. State*, 417 S.W.2d 286 (Tex.Crim.App. 1967).

court's decision. In overturning the court of appeals, the court of criminal appeals held that the defendant's response was not misleading, that it was responsive to the simple question asked, and that the court erred by allowing the State's cross-examination on this point with the introduction of other offenses. It remanded the case for harm analysis.[2]

In *Delk v. State*, the Court of Criminal Appeals set out the relevant factors towards determining whether a defendant's testimony "opens the door" to questions regarding past arrests. In that case, a prosecution witness interrupted a question on direct as follows:

Q: Is this the first time you've ever been in a courtroom—

A: Yes, sir.

Q: —as a witness?

A: Yes, sir . . .

855 S.W.2d at 703–04. The witness had in fact been convicted of a crime in the past. The appellant argued that it could correct the false impression given by the witness that he had no prior experience with the law.

After stating the general prohibition against the introduction of extraneous offenses, the court considered the applicability of the "false impression" exception. It focused first on the defendant's answer in relation to the question asked, and whether or not it was responsive. *Id.* at 704–05, *citing Prescott*, 744 S.W.2d at 131–32.[3] Second, the court examined how broadly the question that was asked could be interpreted, noting that it was important to focus on the intonation of the question, and its relation to the major substantive issue in the trial. *Id.*, citing *Hammett*, 713 S.W.2d at 106.

Applying this analysis to its facts, the *Delk* court found that the witness's initial response (which interrupted the question) was non-responsive, but that when the entire question was completed, and the response was considered in relation to the question, the court determined that the response was not misleading, and therefore did not open the door to the witness's criminal history. The court also noted that the record shed light on the true tenor of the question. The record indicated that the witness prematurely answered the question (indicating the interruption with "__"). The question was quickly completed, and the witness's answer remained the same, thereby clarifying the response.

■ We now apply the analysis outlined in *Delk* to the question and response at issue in this case. The State argued that appellant's unsolicited commentary suggested a "moral" distaste for drinking and driving, and was therefore misleading. According to the State, appellant's comment gave the impression that he never drank while driving, which they maintain was misleading, in light of his prior conviction. Appellant contends that the "false impression" exception did not apply in this case, because the appellant never made any reference to "past" behavior. Rather, his comment was in reference to his existing state of mind on the date of his arrest.

The question asked was clear, and even under the broadest construction, only inquired as to whether the appellant had anything to drink that night, before he got into the vehicle. The appellant's answer was responsive to the question. He stated that he had not been drinking alcohol, and added that he did not (at that time) drink and drive. Given the limited focus of the question, and the response, we conclude that the clear implication of the response, if any, is that, as of the night of the arrest, the defendant refused to drink and drive. It follows, therefore, that

---

2. On remand, the court of appeals held that the error was harmful. *Hammett v. State*, 724 S.W.2d 946 (Tex.App.—Fort Worth 1987). The court reasoned that, because the defendant had not taken a breathalyzer test and was not videotaped, the entire case relied on the credibility of the witnesses. *Id.* at 948. By allowing the State to wrongfully "pull the rug of credibility" out from under the defendant, the court of appeals reasoned that it could not find the error harmless beyond a reasonable doubt. *Id.* The conviction was reversible and remanded for a new trial. *Id.*

3. In that case, the witness was asked his opinion of the legal procedures employed by his attorney, to which the witness answered, in relevant portion, "this is my first time going through *this.*" The Court of Criminal Appeals held that the trial court erred in deciding that this answer "opened the door" to past crimes by giving a false impression. The court held the statement was clearly a response to the question. 744 S.W.2d at 131–32.

the response was not extraneous testimony on a collateral or irrelevant matter which would open the door to impeachment. *See Hammett,* 713 S.W.2d at 105. Moreover, there is nothing in the record suggesting that the tenor of the question was anything but straightforward and its focus narrow.

 The exception to the rule prohibiting evidence of past crimes for impeachment purposes is not broadly construed. Rather, it is generally limited to those instances in which a witness makes assertions about his past which are either patently untrue, or clearly misleading. *See eg. Orozco v. State,* 164 Tex.Crim. 630, 301 S.W.2d 634 (App. 1957); *Trippell v. State,* 535 S.W.2d 178 (Tex. Crim.App.1976). As the Court of Criminal Appeals stated in *Theus,* "in order to 'open the door' to the evidence of prior crimes, the witness must do more than just imply that he abides by the law—he must in some way convey the impression that *he has never committed a crime.*" *Theus,* 845 S.W.2d at 874.(emphasis added).

Appellant's declaration that he "will not" drink and drive does not amount to an assertion, or even an implication, that he never *had* drunk and drove, as the State has suggested. It neither invoked the past, nor implied that he never committed a crime. In fact, as the defense argues, his prior conviction does not necessarily contradict the statement. Therefore, we conclude that, in keeping with the narrow construction of the 'false impression' exception exercised in cases like *Hammett, Prescott, Delk,* and *Theus,* the appellant's statement did not open the door. Thus, the court erred in allowing the prosecution to impeach him with evidence of the prior conviction.

 Having determined that the court erred in allowing the prior conviction to be mentioned during the guilt/innocence phase of the trial, we must determine whether the error was harmless. We must reverse the judgment unless we can determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. Tex.R.App. P. 82(b)(2). In applying the rule, we focus on the integrity of the process rather than the propriety of the outcome. *Harris v. State,* 790 S.W.2d 568, 584–

87 (Tex.Cr.App.1989). Consequently we consider 1) the error's source and nature, 2) whether or to what extent the State emphasized it, 3) its collateral implications, 4) how much weight a juror probably would place on it, and 5) whether declaring it harmless would encourage the state to repeat it with impunity. *Id.*

 Looking first to the error's source and nature, we must determine whether the State intended to taint the trial by offering inadmissible evidence. *Higginbotham v. State,* 807 S.W.2d 732, 735 (Tex.Crim.App.1991). The false impression exception is subjective in nature. Although recent cases suggest that the false impression exception derives from more direct misstatements about the past, there is nonetheless case-law which, on its surface, suggests that mere blanket statements of law-abiding behavior opens the door. *See, eg., Hammett v. State,* 724 S.W.2d 946, 947 (Tex.App.— Fort Worth 1987, on remand)(blanket statement regarding a testator's conduct might open the door if it implies that person has never been arrested). Given that appellant categorically stated that he "will not drink and drive," we cannot say that the prosecutor's desire to quelch any implication that he has never drunk and drove in the past was in any way corrupt. Thus, we do not find that the prosecutor had any intent to taint the proceedings. In fact, he never mentioned the prior conviction for the rest of the trial. Therefore, we conclude that the first two factors militate against finding the error harmful.

 Next, we consider the collateral implications of the error, and the weight the jurors likely placed on it. This factor contemplates "the disparaging of a sole defense." *Higginbotham,* 807 S.W.2d at 737. Appellant's defense was that he was not intoxicated when he was arrested. The prior conviction has no relation to the events of that evening, and does not directly disparage his defense. It was introduced in order to rebut the false impression allegedly created by the appellant. The inference which the State hoped would flow from its admission would be that, if appellant was not truthful

about his past, he was likely to be untruthful in the rest of his testimony. If his credibility was undermined, then the credibility of the officers would increase accordingly in the jurors' minds.

We do not find that the prior crime necessarily undermined appellant's credibility. He never said he had no prior convictions, or that he had never driven under the influence in his life. Also, appellant was able to explain why he gave the response he did, that he was only referring to the night of the arrest. Therefore, the existence of a prior conviction does not undermine the truthfulness of his statement. His prior conviction may have even worked to enhance his credibility. As appellant indicated in his testimony, the fact that he had been convicted prior to that date might actually support his assertion that he no longer drinks and drives, given the fact that he had learned a lesson from the prior arrest and conviction. We find this factor also militates against finding harmful error.

■ We next consider the probable weight placed on the error by the jurors. The greatest possible risk that the introduction of the prior DWI conviction posed to the integrity of the trial stems from its similarity to the offense at issue. As the court in *Theus* indicated, the rationale for excluding such evidence is that "the admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." *Theus*, 845 S.W.2d at 881, *citing United States v. Jackson*, 627 F.2d 1198, 1210 (D.C.Cir.1980). However, the judge in this case specifically instructed the jury in its charge that the prior conviction should only be considered, if at all, in passing upon the credibility of the witnesses. It specifically instructed jurors not to consider the prior conviction as evidence of guilt in the instant case. We presume that the jury obeyed the court's instructions, and did not weigh the prior conviction in determining his guilt for the charged offense. *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1987); *Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex.Crim.

App.1983); *Simpson v. State*, 886 S.W.2d 449, 452 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *cf. Butler v. State*, 890 S.W.2d 951, 956 (Tex.App.—Waco 1995, no pet.)(stating that, notwithstanding court's admonishments to the contrary, fallible jurors might misapply evidence).

■ In passing upon the weight placed upon the error, we may also look to the weight of the other evidence against appellant. Excluding the prior conviction from its deliberations, as we presume it did, the jury had overwhelming reasons to conclude that appellant was intoxicated. He was pulled over for speeding and straddling two lanes on the highway. Two different officers testified that he had a strong odor of alcohol of his breath, that his movements were awkward and deliberate, that he swayed when standing, that his speech was slurred, and that his eyes were bloodshot—all of which are indicators of intoxications. Moreover, Officer Masiel testified that appellant failed the Horizontal Gaze Nystagmus Test (which the Court of Criminal Appeals has held to be an accurate indicator of intoxication), and failed two other field sobriety tests. There was more than enough evidence to dissipate the effect of the error.

Finally, we consider whether finding the error harmless might encourage the State to repeat the error with impunity. We first note that we have considered the intent of the prosecutor when he sought to introduce the prior conviction. We concluded that his intentions were earnest, and that the record does not indicate he intended to taint the trial. Were his intentions otherwise, we would look more suspiciously at the error. Secondly, we have noted that, in order for the door to be opened, a witness must make a direct comment about his past conduct, which creates a false impression that he has no convictions. By attempting to clarify the scope of the exception, we hope to curtail any possible "abuse" of the exception stemming from its potential ambiguity. Finally, we note that the application of this exception requires a case-by-case analysis of the context in which the response was given. We limit our harm analysis to the facts of this case.

In short, we do not find that the mere mention of the appellant's DWI conviction nearly ten years prior to the trial contributed to the appellant's conviction in this instance. We therefore conclude beyond a reasonable doubt that the court's error was harmless. Appellant's second point is overruled.

Appellant's third point argues that the trial court erred in allowing the arresting officer to testify regarding the results of the Horizontal Gaze Nystagmus ("HGN") Test. At the hearing on appellant's motion to suppress the test results, appellant's counsel acknowledged that the test had been determined by the Court of Criminal Appeals to be a sufficiently reliable test to be introduced without a *Fry* test. *See Emerson v. State,* 880 S.W.2d 759 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994). However, his counsel explained that he felt the reasoning of the *Emerson* case was flawed, given the fact that "they admit in the opinion that it's only reliable between 60 and 80 percent of the time, and that depends on all these factors." The trial court denied appellant's motion to suppress and admitted it at trial, over defense objections that it was not a scientifically reliable test, and its prejudicial effect far outweighed its probative value.

■ Relevant evidence is any evidence having any tendency to make the existence of a fact of consequence to the determination of the action more or less probable than it would be without the evidence. Tex.R.Crim. Evid. 401. All relevant evidence is generally admissible, except as otherwise provided by constitution, statute, or evidentiary rules. *Id.* Rule 402. A trial court has broad discretion in determining the admissibility of evidence, and an appellate court will not reverse the trial court's ruling unless a clear abuse of discretion is shown. *Allridge v. State,* 850 S.W.2d 471 (Tex.Crim.App.), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1991); *Fonseca v. State,* 881 S.W.2d 144, 149 (Tex.App.—Corpus Christi 1994, no pet.).

The Court of Criminal Appeals recently addressed the admissibility of the HGN test in *Emerson v. State.* The court concluded that both the theory underlying the HGN test and the technique used in applying it are sufficient to make it "a reliable indicator of intoxication."[4] 880 S.W.2d at 768. The court held that in order for testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test. *Id.* at 769. A qualified witness may testify about a defendant's performance on the test, but may not attempt to use the HGN evidence to quantify the defendant's blood alcohol content. *Id.*

■ In this case, the principal issue was whether or not appellant was intoxicated when he was arrested. At trial, the State called Officer Masiel to testify regarding appellant's performance on the HGN test conducted immediately prior to the arrest. Masiel testified that he was a qualified expert in administering the test, that he had administered the test to the appellant, and that the appellant had failed the test. This testimony was not only relevant to the State's case, but was in fact the most accurate indicator of the appellant's intoxication available, since appellant did not take an intoxilizer breath test. Moreover, nothing in the record indicates that a danger of unfair prejudice, undue delay, or presentation of cumulative evidence existed with respect to the HGN testimony. Because the record indicates that the State fully complied with the procedures set out by *Emerson* for admitting HGN test results, we find no error in the court's admission of this evidence. Appellant's third point is overruled.

In his fourth and fifth points, appellant contends that the court erred in allowing testimony regarding appellant's post-arrest silence to be introduced to the jury, and it was prosecutorial misconduct to ask the question. Appellant's points are premised on the following questions and answer elicited from State witness Officer Masiel on direct examination:

Q: When you have the individual down here at the D.P.S. office, are you required to ask them certain basic questions such as, "Were you operating a vehicle?" and

---

4. In fact, the court stated that the accuracy of the test was between 77% and 88%. *Id.* at 767.

"Where did you start from?" and "Where were you going?" and things of that nature?

A: I did, sir.

Q: Did the defendant agree to answer any of those questions?

A: No, he refused.

At this point appellant's counsel objected to the prosecution's inquiring as to the appellant's post-arrest silence. The court overruled counsel's objection. However, the prosecution withdrew the question, and made no further inquiries or comments regarding appellant's conduct after the arrest. At the conclusion of the evidence, and prior to the jury charge, the court announced to the jury that it had reconsidered the prior objection on this point, and instructed the jury to disregard the testimony regarding appellant's post-arrest silence. Defense counsel then requested a mistrial on that point, which was denied.

 Both the federal and the state constitutions prohibit the use of post-arrest silence against the accused at trial. *See* U.S. CONST. amend V: TEX. CONST. art. I, § 10; *Garza v. State*, 878 S.W.2d 213 (Tex.App.—Corpus Christi 1994, no pet.). It is a well-established rule that an individual's post-arrest silence may not be used against him at trial. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App.1995); *Cuellar v. State*, 613 S.W.2d 494, 495 (Tex.Crim.App.1981); *Garza*, 878 S.W.2d at 220.

In the instant case, we agree with the appellant that the State's inquiry into the appellant's responsiveness after his arrest was impermissible, and the trial court committed error when it initially overruled appellant's objection on this point. However, the error committed does not lead to an automatic reversal. *Dinkins*, 894 S.W.2d at 356. An erroneous statement must be viewed in the context of the entire argument. *Drew v. State*, 743 S.W.2d 207, 220 (Tex. Crim.App.1987); *Garcia v. State*, 880 S.W.2d 497, 499 (Tex.App.—Corpus Christi 1994, no pet.). The harm from such error may be cured by instructions to disregard. *Garcia*, 880 S.W.2d at 499; *Waldo v. State*, 746 S.W.2d 750, 753–54 (Tex.Crim.App.1988).

In this case, the State did not continue in an impermissible line of questioning, even after the court overruled appellant's objection. Rather, it voluntarily withdrew the question, without any request by defense counsel to instruct the jury to disregard the question and answer. The state made no other mention of appellant's post-arrest silence during the course of the trial. Moreover, the court instructed the jury to disregard the testimony prior to the jury charge. Given the context of the singular improper question, and its insignificance in the trial, we conclude that the court's error in allowing the evidence of appellant's post-arrest silence to be heard was harmless. *See Buitureida v. State*, 684 S.W.2d 133, 142 (Tex.App.—Corpus Christi 1984, pet. ref'd)(when there is only a single reference to appellant's silence, and such reference was not repeated or linked with defendant's exculpatory story, and evidence of guilt is otherwise overwhelming, error is harmless). The court's instruction to the jury was sufficient to cure the error. *Dinkins*, 894 S.W.2d at 356. We also decline to hold that the prosecutor's conduct rises to the level of prosecutorial misconduct. Appellant's fourth and fifth points are overruled.

The judgment of the trial court is AFFIRMED.